**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Vs. | ) | CR. NO. 05-00138-01ML |
| | ) | |
| ROBERT PALARDY | ) | |
| | ) | |

**MOTION FOR DOWNWARD DEPARTURE AND SENTENCING MEMORANDUM**

Now comes the defendant, Robert Palardy, by and through his Attorney, Terence Livingston and hereby submits the following Motion for Downward Departure and Sentencing Memorandum.

In January, 2005, the United States Supreme Court in United States v Booker, 543 U.S. 220 (2005), held that the federal Sentencing Commission Guidelines were advisory only. The Supreme Court went on to require that the sentencing court consider the Guideline ranges, but permits the sentencing court to tailor the sentence in the light of other Section 3553(a) sentencing factors as well.

The "norm" in this case pursuant to Booker would be a sentence of 57-71 months as detailed later in this memo. However that does not end the analysis as we have to then take into account and discount the sentence due to a number of factors previously discouraged under the "mandatory guidelines" scheme. Then we need to depart downward from there.

Although under Booker a sentencing judge is required to consult the Guidelines and to take them into account, the Guidelines merely constitute a generalized norm and are but one of the sentencing factors. Since all sentences relate to an individual human person, and not to a norm, a sentence must be shaped to the individual defendant involved in the particular crime by considering the individual sentencing factors. Thus, the Court in imposing an appropriate sentence shall follow the sentencing procedure, by modifying the norm as influenced by its full examination of the individual defendant's personal characteristics, family responsibilities, medical and mental condition, criminal record and the particular circumstances surrounding the crime and imposing a sentence within the range set by Congress, after deep reflection informed by its experience in life and in the law.

The vast majority of cases that have dealt with the Federal Guidelines since Mr. Palardy was sentenced have held that sentencing under the Guidelines violates the Sixth Amendment right to jury trial as interpreted in cases from Jones v. United States, 526 U.S. 227 (1999), to Apprendi v. New Jersey, 530 U.S. 466 (2000), to Ring v. Arizona, 536 U.S. 584 (2002), to Blakely v. Washington, 542 U.S. _, 124 S. Ct. 2531 (2004). See United States v. Booker, 125 S. Ct. 738, 748-50 (2005). Therefore, as modified, the Federal Sentencing Act . . . makes the Guidelines effectively advisory. It requires a sentencing court to consider Guidelines ranges, see 18 U.S.C. § 3553(a)(4), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)." Id. at 757.

Sentencing courts must now consider all of the goals and factors set forth in 18 U.S.C. § 3553(a), not just the guidelines and policy statements in the Guidelines Manual. See Booker, 125 S. Ct. at 757, 764, 766, 767, 768. See also, e.g., United States v. Crosby, 397 F.3d 103, 111-12 (2d Cir. Feb. 2, 2005); United States v. Hughes, 401 F.3d 540, 546 (4th Cir. Mar. 16, 2005).

The new mandatory principle is a limiting one: The sentence must be "**sufficient, but not greater than necessary**," to fulfill the need for the sentence imposed –"

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

Factors the court "shall consider" in determining a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing:

(1) "the nature and circumstances of the offense" and "the history and characteristics of the defendant"
(2) "the kinds of sentences available"
(3) the advisory guidelines
(4) "any pertinent policy statement" in the Guidelines Manual, which includes departures
(5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"
(6) "the need to provide restitution to any victims of the offense"

In order to facilitate the mandates of Booker, the Sentencing Commission advocates a three-step approach which would require a departure analysis in every case: (1) Apply the Sentencing Guidelines to establish the advisory sentencing range; (2) Determine if a traditional departure applies; (3) Determine if a non-guideline sentence, which the Commission calls a "variance," is warranted under § 3553(a).

If the Court were to apply this 3-step approach, then the Court would begin with a guideline range of 51-71 months as indicated in the pre-sentence report with a base offense level of 21 and a criminal history category of IV. Then the Court should apply the traditional departure as outlined in the defendant's objection to the pre-sentence report as incorporated in this sentencing memo and attached hereto, which would leave a base offense level of 18 with a criminal history category of IV and an advisory guideline range of 41-51 months. Then the court should look to the section 3553(a) factors to determine if a non guideline sentence is appropriate. Mr. Palardy is of the opinion that a non guideline sentence is appropriate in his case which will be detailed later in this memorandum.

The Court is now free to consider mitigating factors that once were discouraged by the Courts. Mitigating factors that were previously discouraged except under certain circumstances or for certain purposes should be considered more broadly to the extent they bear on the sentencing considerations found in section 3553(a). Those are age, education and vocational skills, mental and emotional conditions not meeting the diminished capacity standard, physical condition or appearance, employment record, family ties and responsibilities, military, civic, charitable or public service. See U.S.S.G. §§ 5H1.1-6, 11. Likewise, the limitations on each of the generally encouraged mitigating factors in U.S.S.G. §§ 5K2.10 (victim's conduct), 5K2.11 (lesser harms), 5K2.12 (coercion and duress), 5K2.13 (diminished capacity), 5K2.16 (voluntary disclosure), 5K2.19 (post-sentencing rehabilitation efforts), 5K2.20 (aberrant behavior), and 5K2.23 (discharged terms of imprisonment) should no longer bar consideration of these factors to the extent they are relevant under section 3553(a).

Post-Booker cases illustrate that the court may consider formerly discouraged factors, or facts that would not have met pre-Booker standards for departure, to impose a lower sentence. See, e.g., United States v. Spigner, 416 F.3d 708, 711-13 & n.1 (8th Cir. 2005) (health problems); United States v. Antonakopoulos, 399 F.3d 68 (1st Cir. 2005) (that defendant was caretaker for brain damaged son may be considered under 3553(a) though there were alternative means of care and thus not ground for departure); United States v. Hajdley, 400 F.3d 642, 645 (8th Cir. Mar. 16, 2005) (that defendant used embezzled money for her child's high medical expenses, and her "family situation, which included two young children at home" (neither of which rose to the level of departure) were both "factors which can be considered under 3553(a)(1) ('the nature and circumstances of the offense and the history and characteristics of the defendant').

The Court in attempting to determine whether or not a non guideline sentence is appropriate in a particular case needs to look at the individual defendant before her taking into consideration his unique characteristics, such as family history, mental and/or emotional condition, military and employment history etc. In this particular case, Mr. Palardy's work history and family life has been discussed in the PSR and I incorporate that part of the PSR into this memorandum. In addition, Mr. Palardy's upbringing was not an easy one. His home life was chaotic and poor. His mother raised the children with the aid of welfare and "food stamps". His father was absent for most of his life. His mother had many "boyfriends" mental health issues and substance abuse problems, which ultimately lead to Mr. Palardy being sexually abused between the ages of 10 and 12 years. Due to the chaos in his life he quit school in the 11th grade and held a number of menial paying jobs. He ultimately became addicted to drugs and alcohol. Finally at the age of Nineteen years he turned his life around, joined the United States Marine Corp, served his Country in the Invasion of Grenada, where he received a meritorious stripe for serving above and beyond the call of duty and was ultimately granted an Honorable Discharge. Unfortunately for Mr. Palardy, while he was in the Marine Corp his wife committed suicide by shooting herself in the head. Mr. Palardy found his wife in that condition which ultimately led him to leave the marines. This incident left an indelible negative image for Mr. Palardy, which to this day he has not fully recovered from. This left him in a "tailspin" of mental illness, drug and alcohol addiction that he has not been able to recover from. Since his honorable discharge from the Marines, Mr. Palardy has been gainfully employed at a number of jobs throughout his

life. Because he lacks any professional skills he has not had any "high paying" jobs. Mr. Palardy's mental illness so over whelmed him that he currently is receiving social security disability benefits; due to his severe mental illness.

Mr. Palardy after his arrest was evaluated by two Psychologists. one that he hired, Dr. Ronald Stewart and one that the Federal Government employed, Dr. Judith Campbell. (see reports attached hereto)

Dr. Stewart, in his evaluation of Mr. Palardy found that he suffers from post traumatic stress disorder, in addition to major depressive disorder. Also, Dr. Stewart notes that Mr. Palardy has had multiple high risk suicide attempts in the years 1984, 1990, 1992, and 1994 and has received SSDI for several years for depression. Mr. Palardy was in the U.S. Marine Corp. from 1978 to 1984. He flew on helicopter missions to pick up wounded soldiers in Grenada. He received a meritorious stripe for serving above and beyond the call of duty.

The Government also had Mr. Palardy evaluated by Dr. Judith Campbell, Forensic Psychologist, Federal Medical Center, Lexington, KY. Dr. Campbell after reviewing his medical records indicated that Mr. Palardy has been treated for mental health issues since 1984 when his wife shot herself. Dr. Campbell went on to state, "records received reflected numerous and frequent psychiatric hospitalization at McLean Hospital and the VA Medical Center in Providence, RI for depressive symptoms, agitation, and suicidal ideations and attempts. He has been diagnosed with PTSD, major depressive disorder, bipolar disorder and schizophrenia disorder and has been treated with a wide variety of anti-psychotic, anti-depressant and mood stabilizer medications as well as electro convulsive therapy (ECT) since 1999." Dr. Campbell also indicated that Mr. Palardy reportedly became homeless in 1996, and his symptoms have worsened in the past five years as indicated by mental health records reflecting frequent hospitalization for suicidal ideation and agitation, and depressed moods. During the course of Dr. Campbell's evaluation, Mr. Palardy was treated by medical staff and prescribed haldol, cogentin, and serequel for psychotic symptoms; he was prescribed Prozac and trazadone for symptoms of depression and klonopin for symptoms of anxiety. On the Wechsler adult intelligence scale he scored an 86 placing his overall intellectual abilities in the low average range. His non verbal reasoning abilities also fall in the low average range.

Mr. Palardy's mother told the probation officer that prior to his military experience and the death of his wife, that he was a quiet and kind kid. She went on to tell the probation officer that it is her belief that he is haunted by his wife's death and blames himself. It is interesting to note that Mr. Palardy was never in trouble with the law prior to the suicide of his wife. His hospitalizations increased and became more severe after his wife committed suicide.

Also, as to defendants over forty, Mr. Palardy is 48 years old, the risk of recidivism drops dramatically, lessening the need to protect the public from further crimes of the defendant under 3553(a)(2)(C). See United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing

Guidelines at 12 ("Recidivism rates decline relatively consistently as age increases," from 35.5% under age 21, to 9.5% over age 50.), available at Http://www.ussc.gov/publicat/Recidivism

In addition, Mr. Palardy asks this Court to consider a departure based on the disparity of State vs. Federal sentences see United States v. Snyder, 136 F.3d 65 (1st Cir. 1998), in which the district court was reversed for such a departure, now possibly available under 3553(a)(6), depending on the circumstances. See United States v. Moreland, 366 F.Supp.2d 416, 422-23 & n.2 (S.D. W. Va. April 27, 2005): United States v. Wilkerson, 411 F.3d 1 (1st Cir. June 9, 2005) ("disparate treatment between federal and state court sentences"). Mr. Palardy was charged in both State and Federal Court for the same offense, he will receive sentence that is more severe in the federal Courts than he would have received in the State Court.

I would also ask this Court to adopt the sentiments of the Judge in United States v Pipich, 688 F. Supp 191 (District of Maryland 1988), wherein the Judge stated,"this Court is of the opinion that a person's military record is a relevant factor to be considered at sentencing, because it reflects the nature and extent of that person's performance of one of the highest duties of citizenship. An exemplary military record, such as that possessed by this defendant, demonstrates that the person has displayed attributes of courage, loyalty, and personal sacrifice that others in society have not. Americans have historically held a veteran with a distinguished record of military service in high esteem. This is part of the American tradition of respect for the citizen-soldier, going back to the War of Independence. This American tradition is itself the descendant of the far more ancient tradition of the noble Romans, as exemplified by Cincinnatus. In ignoring a defendant's military service record, the Commission has done a disservice (albeit unintentional) to those ex-service men and women who have served their country faithfully in time of war or other need, and who later find themselves brought before a federal court on criminal charges. As the Judges of this Court have previously unanimously noted, *see **United States** v. Bolding*, 683 F. Supp. 1003 (D. Md. 1988), a criminal defendant is entitled to due process in sentencing, which includes consideration of the factors peculiar to him or her that are relevant to the exercise of judicial discretion in sentencing." The Court went on to find that the Defendant's Military records were a mitigating factor that should allow for some leniency.

Punishment must not be draconian; the judge who sentences must be sensitive to both the goals of society reflected by the efforts of the government, and special circumstances of those awaiting sentence. The judge must sentence in a manner that reflects his/her role as the implementer of society's search for justice, as reflected by due and timely punishment of those who transgress, without ever being indifferent to a defendant's plea for compassion, for compassion is also a component of justice. United States v Willis, 322 F.Supp 2.d 76 (1st circuit 2004).

It is interesting to note that, Dr. Campbell, the Federal Government's doctor, recommended in her report,"a court ordered treatment program either within a community setting or through a court ordered hospitalization would allow Mr. Palardy the best prognosis for recovery and stability. It is highly recommended that Mr. Palardy be

treated for his substance abuse problems in a treatment program designed to address both his mental health issue and his substance abuse problem?"

One needs to look at the purposes of the Guidelines as embodied in the SRA. The Guidelines are concerned about recidivism: What are the chances that a defendant of this age or medical condition would be a recidivist? The physical and mental capacity to engage in criminal activity plainly lessens as the offender gets older. See Sol Chaneles, Growing Old Behind Bars: The Aging of Our Convict Population Brings with It Special Needs and Problems that Few of Our Prisons are Ready to Handle, Psychol. Today, October 1987, at 47, 49, quoted in Jason S. Ornduff, Note: Releasing the Elderly Inmate:

Mr. Palardy is 48 years old. A sentence of 24 months -36 months is sufficient but not greater than necessary to fulfill the need for the sentence imposed, especially in light of his severe mental health issues and his service to his Country during the years 1978-1984. Mr. Palardy has an inordinate number of potentially serious medical conditions. It seems imminently logical the Mr. Palardy is at an age where these medical conditions will invariably get worse unless properly treated both within and outside the federal prison system. It seems logical that being away from his support structure, both family and doctors will invariably exacerbate his conditions. It seems logical that were he to go to jail without the proper treatment program that he will emerge in substantially worse shape than he is now. It seems logical that while the BOP can care for him, the costs of that care are bound to escalate. Mr. Palardy is asking this Court to sentence him to that sentence which will ensure he gets help for his illnesses but no longer than is necessary to begin and become stabilized in a treatment program that he can follow once released. It is interesting to note that he told Dr. Campbell, when talking about the consequence of robbing a bank,"I thought I would go to jail instead of living on the streets. I would have a bed. I would get a meal and I would get some help". This appears to be the sentiments of a pathetic and ill person not a violent criminal. Also, Mr. Palardy although he made what could be considered a threat of violence never used any violence when committing the crime for which brings him before the Court.

Wherefore the defendant. Robert Palardy requests that this Honorable Court grant his request for a non guideline sentence based on the fact that he has served his Country honorably in the United States Marine Corp. that he commited his crime due to the fact of his serious mental health issues as well as other issues raised by the defense and in light of recent case law creating guidelines as advisory and instead placing more emphasis on the 3553(a) factors, and the unlikelihood that he will commit further crimes, within the meaning of 18 U.S.C. 3553, as well as the other issues raised in this memorandum and argument before the Court. He is requesting his sentence include one in which he receives the medical treatment which he so sorely requires.

Respectfully submitted,
Robert Palardy
By his Attorney,

Terence Livingston, Esq.
681 Smith Street
Providence, RI 02903
(401) 861-8121

***CERTIFICATE OF SERVICE***

I hereby certify that a true and accurate copy of the within Motion was mailed to: James Leavey, United States Attorney, US Attorney's Office, Fleet Center, 8th Floor, 50 Kennedy Plaza, Providence, RI 02903, on this 16 day in January 2007.